IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24–cv–02183–DDD–MDB

ANNA M. DORO-ON,

      Plaintiff,

v.

MISSILE DEFENSE AGENCY,

      Defendant.

---

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Magistrate Judge Maritza Dominguez Braswell**

      This matter is before the Court on Defendant's Early Motion for Summary Judgment Based on Plaintiff's Failure to Exhaust. (["Motion"], Doc. No. 79.) Plaintiff has responded in opposition (Doc. No. 95) and Defendant has replied in support (Doc. No. 100).[1] After reviewing the Motion, briefing, and relevant law, the Court respectfully **RECOMMENDS** that the Motion be **GRANTED in part and DENIED in part**.

### SUMMARY FOR SELF-REPRESENTED PLAINTIFF

      The Court is recommending that most of Defendant's Summary Judgment Motion be granted. Before an employee can sue a government agency for employment discrimination, she must first report her complaint to her agency within a set time. Here, that period of time was

---

[1] Additionally, with the leave of the Court, Plaintiff filed a sur-reply (Doc. Nos. 106; 110), which the Court has also considered.

forty-five days from October 11, 2022, the day you learned you were not selected for the Mission

Director position. Since you did not contact an EEO counselor until January 2023, you were too

late. Additionally, while some of the incidents occurred after you filed your administrative

complaint, they were never properly added into the complaint, nor did you seek to separately

exhaust your administrative remedies with respect to those incidents.

However, your pay discrimination claim under the Equal Pay Act ("EPA") does not

require exhaustion. Thus, the Court recommends that the EPA claim be allowed to proceed.

This is only a summary of the Court's Recommendation. The entire Recommendation is

set forth below, along with information about your right to object, if you choose.

## BACKGROUND

Plaintiff brings this employment action alleging discrimination, retaliation, hostile work

environment, and related claims arising from her federal employment with the Missile Defense

Agency ("MDA"). (*See generally* Doc. No. 77.) Defendant moves for early summary judgment

arguing that Plaintiff failed to timely exhaust her administrative remedies. (Doc. No. 79.)

The following facts are undisputed for purposes of the Motion.[2]

---

[2] The Court has considered Plaintiff's response to Defendant's Statement of Undisputed Material Facts. (ECF No. 95-1.) However, the conclusory evidentiary objections (e.g., lack of foundation or hearsay) and legal arguments, do not create a genuine dispute of material fact. "At the summary judgment stage, evidence 'need not be submitted in a form that would be admissible at trial.'" *Argo v. Blue Cross & Blue Shield of Kansas, Inc.*, 452 F.3d 1193, 1199 (10th Cir. 2006) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986)). So long as its substance would be admissible, it suffices that the evidence "may ultimately be presented at trial in an admissible form." *Id.* (citing *Bryant v. Farmers Ins. Exch.,* 432 F.3d 1114, 1122 (10th Cir.2005)). Additionally, Plaintiff has submitted a separate "Additional Statement of Uncontroverted Material Facts" (Doc. No. 95-3.) And while Defendant does not dispute many of those additional facts, (*see* Doc. No. 100 at 4–5), they are in large part irrelevant to the exhaustion argument, and are therefore not recited here.

1. Plaintiff was employed by MDA beginning in 2012. (Doc. No. 79 at ¶ 1 (citing Doc. No. 79-1 at ¶ 4.)

2. On August 11, 2022, MDA posted an online job announcement, No. MDA-22-11608608-MP, for the position of Interdisciplinary General Engineer/Operations Research Analyst (the "Mission Director position"). (*Id.* at ¶¶ 2–3 (citing Doc. No. 79-2 at ¶¶ 4–5; Doc. No. 79-2 at 5–16).)

3. Plaintiff applied for the Mission Director position. (*Id.* at ¶ 4 (citing Doc. No. 79-2 at ¶ 6).)

4. Following an interview, Plaintiff was not selected. A different MDA employee, Frank Saffen, was selected. (*Id.* at ¶¶ 5–6 (citing 79-2 at ¶¶ 7–8; Doc. No. 79-2 at 17–20).)

5. On October 11, 2022, Plaintiff was notified by email that she had not been selected for the Mission Director position. (*Id.* at ¶ 7 (citing Doc. No. 79-2 at ¶ 9; Doc. No. 79-2 at 21–22).)

6. On January 5, 2023, Plaintiff contacted an Equal Employment Opportunity ("EEO") counselor. (*Id.* at ¶ 8 (citing Doc. No. 79-1 at ¶ 5; Doc. No. 79-1 at 8).) This was the only occasion on which Plaintiff sought EEO counseling. (*Id.* at ¶ 20 (citing Doc. No. 79-1 at ¶ 20).)

7. Plaintiff told the counselor that "she had been discriminated against and subjected to a hostile work environment based on race (Hispanic), color (brown), and sex (female), and in retaliation, beginning in 2021 and continuing to the present." (*Id.* at ¶ 9 (quoting Doc. No. 79-1 at 9).)

8. Plaintiff identified five incidents of harassment to the counselor: (i) being assigned insignificant work and having to complain to obtain meaningful assignments; (ii) exclusion from important meetings; (iii) the pre-selection of Saffen for the Mission Director position over her, despite her being better qualified; (iv) verbal abuse by Timothy McDonald; and (v) verbal abuse by Saffen. (*Id.* at ¶ 10 (quoting Doc. No. 79-1 at 9).)

9. Plaintiff told the counselor that what "triggered her to file this complaint now" was her non-selection for the Mission Director position and Saffen's selection. (*Id.* at ¶ 11 (quoting Doc. No. 79-1 at 12).)

10. As to the non-selection, Plaintiff told the counselor that she "learned of [the] selection of Frank Saffen by email dated December 2, 2022, from Timothy McDonald." (*Id.* at ¶ 13 (quoting Doc. No. 79-1 at 9).) Plaintiff did not provide the counselor with specific dates for any of the other alleged acts of harassment. (*Id.* at ¶ 14.)

3

11. On March 29, 2023, Plaintiff was notified of her right to file a formal complaint of employment discrimination. (*Id.* at ¶ 15 (citing Doc. No. 79-1 at ¶ 6; Doc. No. 79-1 at 145–147).)

12. Plaintiff filed an individual complaint of employment discrimination on April 7, 2023, and a corrected individual complaint on May 23, 2023 (the "corrected EEO complaint"). (*Id.* at ¶ 16–17 (citing Doc. No. 79-1 at ¶¶ 7, 12; Doc. No. 79-1 at 148–155).)

13. In the corrected EEO complaint, Plaintiff alleged discrimination based on race, color, national origin, and sex, and reprisal for prior EEO activity. (*Id.* at ¶ 18 (citing Doc. No. 79-1 at 153).) She identified "Mar 2023" as the date of the most recent alleged discrimination but did not identify any specific incident of discrimination or retaliation occurring after the date she sought EEO counseling. (*Id.* at ¶ 19 (citing Doc. No. 79-1 at 153–54).)

14. On December 11, 2023, the EEO office issued an acceptance-of-issues letter accepting six issues for investigation, concerning: (1) offensive comments by Plaintiff's supervisors about her physical features and gender (2015–2023); (2) statements that she was not qualified and incapable of performing her duties (2021–May 30, 2023); (3) exclusion from mission-critical meetings (2021–May 30, 2023); (4) a co-worker–created hostile work environment (June 2022–March 2023); (5) her non-selection for the Mission Director position; and (6) the withholding of significant job assignments absent complaint. (*Id.* at ¶ 23 (quoting Doc. No. 79-1 at 157–58).)

15. The acceptance-of-issues letter stated that any discrete acts occurring more than 45 days before January 5, 2023, were untimely, and that although an untimely discrete act could be considered in support of a hostile work environment claim, such acts were not independently actionable. (*Id.* at ¶¶ 24–25 (quoting Doc. No. 79-1 at 157, n.1).)

16. An EEO investigator investigated Plaintiff's discrimination complaint. (*Id.* at ¶ 26 (citing Doc. No. 79-1 at ¶¶ 14, 17; Doc. No. 79-1 at 161–88).)

17. During the investigation, Plaintiff attempted to amend her EEO complaint. Her attempts were rejected because she did not provide the agency with requested information as to the specific bases for the proposed amendments. (*Id.* at ¶¶ 27–28 (citing Doc. No. 79-1 at ¶ 18; Doc. No. 79-1 at 189–95).)

18. In the Fourth Amended Complaint ("FAC"), Plaintiff asserts claims for discrimination, hostile work environment, harassment, disparate treatment, and wrongful termination based on race, ethnicity, national origin, color, sex or gender, and retaliation; a sexual harassment claim; and a claim under the Lilly Ledbetter Fair Pay Act of 2009 and the Equal Pay Act of 1963. (*Id.* at ¶ 29 (citing Doc. No. 77).)

4

19. The FAC includes a 137-paragraph description of events spanning from 2010 through July 2025. (*Id.* at ¶¶ 30–31 (citing Doc. No. 77 at ¶¶ 165–302).)

20. The FAC does not allege any incident of discrimination or retaliation occurring between November 21, 2022, and January 5, 2023, or between January 5, 2023, and April 7, 2023. (*Id.* at ¶¶ 33–34 (citing Doc. No. 77).)

**LEGAL STANDARD**

**I.    Summary Judgment**

The Court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but instead, must designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P. 56(c).

"A 'judge's function' at summary judgment is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 249 (1986)). Whether there is a genuine dispute as to a material fact depends upon "whether the evidence presents a sufficient disagreement to require submission to a jury," or conversely, whether the evidence "is so one-sided that one party must prevail as a matter of law." *Carey v. U.S. Postal Serv.*, 812 F.2d 621, 623 (10th Cir. 1987) (quoting *Anderson*, 477 U.S. at 251–52). A disputed fact is "material" if "under the substantive law it is essential to the proper disposition of

the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson*, 477 U.S. at 248). A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Thomas v. Metro. Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*, 477 U.S. at 248). "Where the record taken as a whole could not lead a rational trier of fact to find for the [nonmovant], there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

In evaluating a motion for summary judgment, a court may consider admissible evidence only. *Johnson v. Weld Cnty.*, 594 F.3d 1202, 1209–10 (10th Cir. 2010). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Concrete Works*, 36 F.3d at 1517. However, this standard does not require the Court to make unreasonable inferences in favor of the nonmoving party. *Carney v. City & Cnty. of Denver,* 534 F.3d 1269, 1276 (10th Cir. 2008). The nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case. *Hulsey v. Kmart, Inc.*, 43 F.3d 555, 557 (10th Cir. 1994).

II.    **Self-Represented Plaintiff**

In applying the above principles, this Court is mindful that Plaintiff represents herself and the Court thus affords her papers and filings a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972). But the Court cannot and does not act as her advocate, *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991), and applies the same procedural rules and substantive law to Plaintiff as to a represented party. *See Murray v. City of Tahlequah*, 312 F.3d 1196, 1199 n.2 (10th Cir. 2002); *Dodson v. Bd. of Cty. Comm'rs*, 878 F. Supp. 2d 1227, 1236 (D. Colo. 2012)

**ANALYSIS**

Defendant moves for summary judgment on all claims, arguing that Plaintiff failed to timely exhaust her administrative remedies before filing suit.

Before bringing a Title VII discrimination or retaliation claim in federal court, a federal employee must first exhaust her administrative remedies. *See Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1181 (10th Cir. 2018). As relevant here, the federal employee must initiate contact with an EEO counselor within forty-five days of each allegedly discriminatory or retaliatory act. *See* 29 C.F.R. § 1614.105(a)(1); *Hickey v. Brennan*, 969 F.3d 1113, 1119 (10th Cir. 2020).

A discrete discriminatory or retaliatory act, such as a failure to promote, "constitutes a separate actionable 'unlawful employment practice'" that "starts a new clock" and must be independently exhausted. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113–14 (2002); *see Martinez v. Potter*, 347 F.3d 1208, 1210 (10th Cir. 2003) ("[E]ach discrete incident of such treatment constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted."). The forty-five-day period for a discrete act runs from the date the employee is notified of the act, and "notice or knowledge of discriminatory motivation is not a prerequisite for a cause of action to accrue .... [o]n the contrary, it is knowledge of the adverse employment decision itself that triggers the running of the statute of limitations." *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1187 (10th Cir. 2003) (quoting *Hulsey v. Kmart, Inc.* 43 F.3d 555, 557 (10th Cir. 1994)).

A hostile work environment claim is different. It is composed of a series of acts that collectively constitute a single unlawful employment practice, and it is timely in its entirety so

7

long as at least one act contributing to the hostile environment occurred within the forty-five-day period. *Morgan*, 536 U.S. at 115–17.

Two additional constraints are relevant here. First, an incident is exhausted only if it falls "within the scope of an EEOC investigation which would reasonably grow out of the charges actually made in the EEOC charge." *Smith v. Cheyenne Ret. Invs. L.P.*, 904 F.3d 1159, 1164 (10th Cir. 2018) (cleaned up) (quoting *Martin v. Nannie & Newborns, Inc.*, 3 F.3d 1410, 1416 n.7 (10th Cir. 1993)). In other words, a plaintiff cannot raise in federal court a claim she never reasonably presented to the agency. Second, incidents occurring after the employee files her administrative complaint are not exhausted by that filing unless the employee amends it before the agency's investigation concludes. *See Eisenhour v. Weber Cnty.*, 744 F.3d 1220, 1227 (10th Cir. 2014) ("[F]ederal courts lack jurisdiction over incidents occurring after the filing of an EEOC claim unless the plaintiff files a new EEOC claim or otherwise amends her original EEOC claim to add the new incidents.").

Defendant contends that every incident alleged in the FAC falls into one of two categories, each dooming the claims. First, incidents that pre-date Plaintiff's EEO counselor contact. According to Defendant, because Plaintiff contacted a counselor on January 5, 2023, the forty-five-day window reaches back only to November 21, 2022,[3] and the FAC alleges no discriminatory or retaliatory act within that window. Second, incidents post-dating Plaintiff's April 7, 2023, administrative complaint. Defendant argues that all acts occurring after an EEO

---

[3] This period of time between November 21, 2022 and January 5, 2023, shall hereinafter be referred to as the "Forty-Five-Day Window."

complaint is filed must be added by amendment before the investigation concludes, and Plaintiff's attempts to amend were rejected.

The Court has carefully reviewed the parties' arguments, supporting evidence, and applicable law, and now considers whether Plaintiff has exhausted her administrative remedies with respect to each group of claims.

## I.      Disparate Treatment Claims

Plaintiff brings various disparate treatment claims, alleging adverse action based on a protected class, or retaliation for EEO activity. (Doc. No. 77 at 98–134.)

At the outset, the Court notes that almost every act of alleged discrimination or retaliation in the FAC, unequivocally occurred outside the Forty-Five-Day Window, barring those claims for untimely exhaustion. (*See* Doc. No. 79 at ¶ 33; Doc. No. 77 ¶¶ 165–302.)[4]

There is one exception: Plaintiff's non-selection for the Mission Director position. Whether the non-selection claim was timely exhausted turns on the date of accrual. Defendant contends the clock began to run on October 11, 2022, when Plaintiff was notified that she had not been selected for the Mission Director position. (*See* Doc. No. 79-2 at 21–22 (email noticing non-selection).) Plaintiff's position is that it began to run on December 2, 2022, when she learned that Frank Saffen had been selected in her place.[5] (Doc. No. 95-4 at ¶¶ 75–76.) Resolving this disagreement is dispositive: measured from October 11, her counselor contact fell

---

[4] Even though these incidents cannot support a disparate treatment claim, they may support a hostile work environment claim, which the Court addresses separately, below.

[5] December 2, 2022, is also the date Plaintiff told the EEO counselor that the adverse action occurred. (*See* Doc. No. 79-1 at 9.)

outside the Forty-Five-Day Window; measured from December 2, it fell within it, and the exhaustion of administrative remedies was timely.

As noted above, for a discrete employment action, the forty-five-day period runs from the date the employee is notified of the challenged decision, not from the date she learns the reason for it or discovers facts suggesting it was discriminatory. *See Davidson*, 337 F.3d at 1187. Applying that rule here, the clock was triggered on October 11, 2022, the undisputed date upon which Plaintiff was notified by email that she had not been selected for the Mission Director position. (*See* Doc. No. 79-2 at 21–22.) Because that date is outside the Forty-Five-Day Window, Plaintiff did not timely exhaust this claim.

## II.    Hostile Work Environment Claims

Plaintiff also alleges a hostile work environment. This claim is timely if at least one act contributing to the hostile work environment falls within the Forty-Five-Day Window. *See Morgan*, 536 U.S. at 115–17. Plaintiff identifies none. The only conduct she arguably places within the window is an incident in which Frank Saffen "suddenly attacked" her in her office "[a]pprox[imately] October – early December 2022." (Doc. No. 77 at ¶ 286.) But the allegation is too indefinite, offering only a range of dates, some of which would fall outside the Forty-Five-Day Window. And even assuming the incident occurred within the window, it was not properly exhausted because Plaintiff did not describe the incident to the EEO counselor, and it was not part of the six issues the agency accepted for investigation. Indeed, none of the issues that were accepted for investigation concerned Mr. Saffen, or the conduct alleged in paragraph 286. (*See* Doc. No. 79-1 at 157–58); *see generally Smith*, 904 F.3d at 1164.

Because Plaintiff fails to identify, with specificity, an act that occurred inside the Forty-Five-Day Window, and that contributed to the alleged hostile work environment, the hostile work environment claims were not timely exhausted, either.

**III.   Claims Arising from Incidents That Occurred After the Administrative Complaint**

Plaintiff makes an additional set of allegations about the misconduct that occurred after Plaintiff filed her administrative complaint. Specifically, Plaintiff filed her administrative complaint on April 7, 2023. (Doc. No. 79-1 at 148–51), and a corrected administrative complaint on May 23, 2023. (*Id.* at 152–55.) However, the FAC alleges numerous incidents that post-date that filing, extending through 2025 and including Plaintiff's eventual termination. (*See* Doc. No. 77 at ¶¶ 289–302.)

Incidents occurring after an employee files her administrative EEO complaint are not exhausted by that complaint unless the employee amends it before the agency's investigation concludes. *See Eisenhour*, 744 F.3d at 1227. Here, Plaintiff's attempts to amend her administrative complaint during the investigation were rejected. (*See* Doc. No. 79-1 at 189–95.) Further, there is no indication that Plaintiff initiated a new EEO counselor contact after January 5, 2023. Plaintiff's failure to add these incidents to her administrative complaint, or to separately exhaust them, warrants dismissal.

**IV.   Equitable Tolling**

"Because the mandatory time limit for filing charges with the EEOC is not a jurisdictional prerequisite, the doctrines of waiver, estoppel, and tolling may apply when equity requires." *Martinez v. Million Air Mech. Inc.*, 2022 WL 843889, at *2 (D. Colo. Mar. 22, 2022), *report and recommendation adopted*, 2022 WL 21851574 (D. Colo. July 8, 2022)

11

(citing *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1167 (10th Cir. 2007)). "Equitable exceptions, however, have been narrowly construed" and generally require "extraordinary circumstance[s]." *Harms v. IRS*, 321 F.3d 1001, 1006 (10th Cir. 2003); *Yang v. Archuleta*, 525 F.3d 925, 928 (10th Cir. 2008). The Tenth Circuit "has generally recognized equitable tolling of Title VII periods of limitation only if circumstances rise to the level of active deception which might invoke the powers of equity to toll the limitations period," such as an employee being "lulled into inaction by an employer's deliberate design." *Al–Ali v. Salt Lake Cmty. Coll.*, 269 F. App'x 842, 847 (10th Cir. 2008) (internal quotation marks omitted).

Here, Plaintiff makes vague references to the equitable tolling doctrine, arguing that her untimeliness should be excused. (*See, e.g.*, Doc. No. 95 at ¶ 5; Doc. No. 110 at ¶ 3.) But she alleges no facts from which the Court could infer extraordinary circumstances or some other basis for tolling. At best, Plaintiff alleges that MDA failed to post notices informing employees of the EEO complaint process and its deadlines. (Doc. No. 95 at ¶ 5 ("From 2012 through 2024 ... MDA did not put posters on the walls, no flyers, and no pamphlets for employees with regards to employee's EEO and ["EEOC"] complaint processes or regarding notice of filing procedure[.]").[6] But equitable tolling requires more. Plaintiff must plead an affirmative act by which the employer misleads the employee or lulls her into inaction by deliberate design. *See Martinez v. Orr*, 738 F.2d 1107, 1110 (10th Cir. 1984) (tolling permitted if a plaintiff "has in some extraordinary way been prevented from asserting his or her rights"). Plaintiff does not allege that MDA made false statements about the EEO process or its deadlines, or that it took

---

[6] The Court is mindful of 29 C.F.R. § 1614.105(a)(2), but Plaintiff does not argue pursuant to it, or even mention it. Thus, the Court does not consider its potential application.

any step calculated to discourage or delay her filing; she alleges only that MDA did not display information about making such filings. The absence of information is not the type of affirmative deception the doctrine demands. At most, Plaintiff describes a passive omission, which fails to clear the "high bar" tolling requires. *Edmonds-Radford v. Sw. Airlines Co.*, 17 F.4th 975, 988 (10th Cir. 2021) ("Equitable tolling is appropriate only where the employer has committed 'active deception' lulling a plaintiff into inaction." (quoting *Gray v. Phillips Petrol. Co.*, 858 F.2d 610, 615–16 (10th Cir. 1988))).[7]

## V.    Pay Claims

Plaintiff also appears to bring a claim under the Equal Pay Act of 1963 ("EPA") and the Lilly Ledbetter Fair Pay Act ("LLFPA"). (Doc. No. 77 at ¶¶ 602–13.) Plaintiff contends she was paid less than her male colleagues at the same grade for substantially equal work and asserts each paycheck from 2019 through her July 2025 termination was a new violation. (*Id.*)

The LLFPA claim is subject to the same exhaustion analysis as Plaintiff's disparate treatment and hostile work environment claims. This is because the LLFPA does not support a freestanding cause of action. It simply amends Title VII's rules regarding pay-discrimination. *See Almond v. Unified Sch. Dist. No. 501*, 665 F.3d 1174, 1179–84 (10th Cir. 2011). And a Title VII pay-discrimination claim remains subject to the same exhaustion requirements as Plaintiff's other Title VII claims. *See, e.g.*, *Valdez v. Tyco Integrated Sec. LLC*, 2016 WL 1595361, at *3 (D. Utah Apr. 20, 2016) (dismissing a Title VII pay discrimination claim for failure to exhaust). Here, the EEO counselor therefore did not identify a pay claim among the accepted issues. (Doc.

---

[7] Plaintiff also gestures at her health issues as a basis for equitable tolling. (*See* Doc. No. 110 at ¶ 6.) But she provides no detail, such as the nature of any condition, its timing, or its effect on her ability to pursue administrative remedies.

No. 79-1 at 157–58.) Moreover, Plaintiff was expressly advised that she could correct any

misidentified claim in writing within five days, but she never corrected it to include the pay

claim. (*Id.*) Because the pay claim was not identified and not "within the scope of [the] EEOC

investigation," *Smith*, 904 F.3d at 1164, the administrative remedies were not properly

exhausted, and the claim fails.

Plaintiff's reliance on the EPA requires a different analysis. The EPA does not require

exhaustion of administrative remedies. *See Weber v. Bd. of Trs. of Univ. of N. Colorado Univ. of

N. Colorado*, 2025 WL 2530692, at *8 (D. Colo. Sept. 3, 2025) ("Unlike Dr. Weber's Title VII

claims, Dr. Weber's EPA claims do not require administrative exhaustion before filing suit."

(collecting cases)). Because Defendant's Motion is entirely focused on Plaintiff's failure to

exhaust, (*see* Doc. No. 79 at 14 ("[T]he Court should grant judgment for Defendant on all claims

based on Plaintiff's failure to timely exhaust her discrimination and retaliation claims."), and

because Defendant advances no other grounds for summary judgment on the EPA claim,

Defendant's Motion must be denied to the extent it seeks summary judgment on this claim.

## CONCLUSION

For the foregoing reasons the Court respectfully **RECOMMENDS** that Defendant's

Early Motion for Summary Judgment Based on Plaintiff's Failure to Exhaust (Doc. No. 79) be

**GRANTED in part and DENIED in part**, and that all of Plaintiff's claims be dismissed with

the exception of the claim filed under the Equal Pay Act.

**ADVISEMENT TO THE PARTIES**

Within fourteen days after service of a copy of the Recommendation, any party may

serve and file written objections to the Magistrate Judge's proposed findings and

recommendations with the Clerk of the United States District Court for the District of Colorado.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A

general objection that does not put the district court on notice of the basis for the objection will

not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's

report and recommendation must be both timely and specific to preserve an issue for de novo

review by the district court or for appellate review." *United States v. One Parcel of Real Prop.*

*Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to

make timely objections may bar *de novo* review by the district judge of the magistrate judge's

proposed findings and recommendations and will result in a waiver of the right to appeal from a

judgment of the district court based on the proposed findings and recommendations of the

magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's

decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection

does not preclude application of the "firm waiver rule"); *One Parcel of Real Prop.*, 73 F.3d at

1059-60 (a party's objections to the magistrate judge's report and recommendation must be both

timely and specific to preserve an issue for *de novo* review by the district court or for appellate

review); *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir.

1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had

waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342,

1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal

the magistrate judge's ruling). *But see Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th

Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 6th day of August, 2026.

**BY THE COURT:**

_____
Maritza Dominguez Braswell
United States Magistrate Judge

16